IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | No. 08 C 1326 |
| GREEN DRAGON TRADING COMPANY, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Green Dragon Trading Co.'s ("Green Dragon") motion to dismiss for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer. For the reasons stated below, we deny Green Dragon's motion to dismiss and grant Green Dragon's motion to transfer.

**BACKGROUND**

In October 2007, Plaintiff New Hampshire Insurance Co. ("New Hampshire") alleges that it issued Green Dragon an Executive Yacht Insurance Policy ("Policy"), effective October 24, 2007 to October 24, 2008. According to New Hampshire, the Policy coverage related to M/Y LE VIPER, Green Dragon's 85-foot motor yacht ("Yacht"). On November 18, 2007, the Yacht was allegedly traveling north from Key West, Florida towards Ft. Lauderdale, Florida and began taking on water in the engine room. New Hampshire alleges that the United States Coast Guard and a private towboat responded to the Yacht's distress call, and the private towboat towed the Yacht to port. New Hampshire claims that it was notified of the incident on November 19, 2007 ("Claim"). On December 7, 2007, New Hampshire alleges that it issued a Reservation of Rights letter informing Green Dragon that coverage might be denied pursuant to provisions of the Policy. On March 3, 2008, New Hampshire denied coverage for the damage to the Yacht ("Damage").

New Hampshire brought the instant action, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking a declaration of its rights and responsibilities for the Damage under the Policy. Specifically, New Hampshire requests that this court declare that it does not have an obligation or duty to provide coverage for the Claim because (1) losses arising out of "wear and tear" are not covered under Paragraph 10(B)(2) of the Policy (Count I), (2) losses arising out of "improper maintenance" are not covered under Paragraph 10(B)(1) of the Policy (Count II), and (3) Green Dragon breached the implied warranty of seaworthiness

(Count III).  (Compl. Par. 21-23).  Green Dragon filed the instant motion to dismiss for lack of personal jurisdiction and venue or, in the alternative, to transfer.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that an action should be dismissed against a party over whom the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of providing sufficient evidence to establish that personal jurisdiction exists.  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  For on a motion to dismiss for lack of personal jurisdiction, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.,* 304 F.Supp.2d 1018, 1021 (N.D. Ill. 2004); *Zurich Capital Markets, Inc. v. Coglianese*, 2004 WL 2191596, at *3 (N.D. Ill. 2004).

Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)") provides that a party may move to dismiss an action when the action is not filed in a proper venue. Fed. R. Civ. P. 12(b)(3).  If a court determines that it is not a proper venue for the action, the court is required to dismiss the action or "if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district if such a transfer is appropriate and if it is done "[f]or the convenience of parties and witnesses, [and] in the interest of justice. . . ."  28 U.S.C.

§ 1404(a).  In order to transfer a case pursuant to 28 U.S.C. § 1404(a), the transferor court must first find that: (1) venue is proper in the transferor district, and (2) venue is proper in the transferee district.  *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); 28 U.S.C. § 1404(a)(stating that transfer can only be made to a district in which the action "might have been brought").  The moving party has the burden of "establishing . . . that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219.

## DISCUSSION

As an initial matter, this court notes that New Hampshire has brought this action as an admiralty and maritime claim under Federal Rule of Civil Procedure 9(h) ("Rule 9(h)").  (Compl. Par. 5).  Rule 9(h) states that "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty claim or maritime claim for purposes of Rules 14(c), 38(e), and 82. . . ." Fed. R. Civ. P. 9(h)(1).  New Hampshire's complaint states "this claim is an admiralty and maritime claim within the meaning of Rule 9(h)."  (Compl. Par. 5). This statement satisfies the requirements necessary to designate this action as an admiralty case.  Fed. R. Civ. P. 9(h)(1); *see also Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 666 (7th Cir. 1998)(stating that "the preferred method to designate the action as being one in admiralty is by an express reference to Fed. R. Civ. P. 9(h)"). Thus, Green Dragon's motion to dismiss or to transfer venue must be considered in

4

light of the specific rules applicable to an admiralty and maritime claim.  *See Wingerter*, 185 F.3d at 664 (stating that "numerous and important consequences flow from whether a district court treats a case as falling under admiralty or [some other form of subject matter] jurisdiction").

I.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Green Dragon argues that this court must dismiss the instant action due to the fact that it lacks personal jurisdiction over Green Dragon.  Personal jurisdiction may only be created by "statute or federal rule with force of statute" and the Seventh Circuit has declined to create a uniform national rule for personal jurisdiction in admiralty cases.  *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534-35 (7th Cir. 1991).  Therefore, the proper inquiry with respect to personal jurisdiction is whether (1) there is a federal or state statutory basis for personal jurisdiction, and (2) whether the exercise of personal jurisdiction would be consistent with the applicable state constitution and the United States Constitution.  *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corporation*, 230 F.3d 934, 939 (7th Cir. 2000).  Illinois authorizes personal jurisdiction over out-of-state defendants under its long arm statute which states, in part, that "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2-209(c).  Thus, in addition to the specific authorized instances of personal jurisdiction, Illinois law allows the exercise of personal jurisdiction over non-resident

defendants if doing so comports with the due process provisions of the Illinois and Federal Constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d, 1272, 1276 (7th Cir. 1997)(stating that because the long arm statute "authorizes personal jurisdiction to the constitutional limits, the three inquiries . . . collapse into two constitutional inquiries").

The Seventh Circuit has concluded that there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Federal due process requirements determine when a court "may exercise personal jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004)(explaining that the due process law is intended to "allow[ ] potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit"). A court may only exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR*, 107 F.3d at 1277 (quoting in part *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

For the personal jurisdiction analysis, a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,

6

338 F.3d 773, 780 (7th Cir. 2003). The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Id.* In assessing such foreseeability it is the defendant's conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.*

If a court determines that the defendant has sufficient contacts with the forum state, "those contacts may be evaluated in light of other factors to determine, in the final analysis, whether the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Purdue Research Found.*, 338 F.3d at 781. In determining whether or not the exercise of personal jurisdiction comports with the notions of "fair play and substantial justice" the court should consider: (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute]," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Purdue Research Found.*, 338 F.3d at 780 (quoting *Burger King*, 471 U.S. at 477).

In regards to contractual disputes, the court must examine the "contract in the context of the entire transaction of which it is a part" and consider "prior

7

negotiations, contemplated future consequences, the terms of the contract and the parties' course of actual dealing with each other." *Id.*  Personal jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King v. Rudewicz*, 471 U.S. 462, 475 (1985)(emphasis in original)(quoting in part *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In the instant action, the New Hampshire's claims arise out of the contractual relationship between Green Dragon and New Hampshire.  Green Dragon alleges that it "has no actual presence [in the Northern District of Illinois]."  (Mot. 2).  Green Dragon states that it "has no office, and no registered agent, in Chicago."  (Mot. 1).  According to Green Dragon, the only connection between the instant action and the Northern District of Illinois is that "[t]he lawyer who gets premium notices is in Chicago."  (Mot. 1).  The attorney who receives premium notices is named Joseph L. Dombrowski ("Dombrowski").  (Mot. Ex. 1 Par. 2).  In a sworn affidavit submitted by Dombrowski, he claims that he is not the registered agent for Green Dragon and that Green Dragon has no registered agent in Illinois.  (Mot. Ex. 1 Par. 2).  However, New Hampshire points out that Dombrowski completed two insurance applications on behalf of Green Dragon, which (1) listed Dombrowski as the "beneficial owner" of the Yacht, (2) listed the address for Green Dragon at "670 N. Clark, Chicago, IL 60610," and (3) indicated that the Yacht would be kept in the Northern District of Illinois between November 2 and May 31 each year.  (Ans. Ex. 1(A)-(B)).  Furthermore, New Hampshire points out that in the breach of contract action filed by

8

Green Dragon in Florida state court (and subsequently removed to United States District Court for the Southern District of Florida), Green Dragon acknowledged that the insurance contract was entered into in the state of Illinois.  (Ans. Ex. 3 Par. 5). Green Dragon does not dispute the fact that such information was provided to New Hampshire at the formation of the insurance contract and it is clear from the record that the contract between New Hampshire and Green Dragon was formed in the Northern District of Illinois.  Green Dragon, in its reply, emphasizes the fact that the witnesses to the accident are not from the state of Illinois, but this does not have a bearing on whether Green Dragon is subject to personal jurisdiction.

     The undisputed facts establish that Green Dragon is subject to personal jurisdiction of this court.  The insurance contract between Green Dragon and New Hampshire was formed in this district and, while Dombrowski may not be the registered agent for Green Dragon, the record reflects that all communication between New Hampshire and Green Dragon was directed through Dombrowski in Chicago, Illinois.  It is foreseeable that Green Dragon would be sued at the same place in which it was receiving its communications relating to the Policy and Damage.  Additionally, Green Dragon represented to New Hampshire that the Yacht would be kept in Chicago, Illinois for seven months of the year.  Thus, it is clear that Green Dragon has purposefully availed itself of the privilege of conducting business in this district and has subjected itself to suit in Illinois by entering into an insurance agreement in this state.  Considering the entire insurance transaction and the parties' actual dealings with each other, Green Dragon has sufficient contacts in Illinois for

the purpose of personal jurisdiction.  Furthermore, personal jurisdiction would be compatible with fair play and substantial justice.  Based on the above analysis, this court has personal jurisdiction over Green Dragon.  For that reason, Green Dragon's motion to dismiss for lack of jurisdiction fails.

II. Rule 12(b)(3) Motion to Dismiss for Improper Venue

Green Dragon also argues that the Northern District of Illinois is not a proper venue for the instant action and that the court should dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(3).  As stated above, Rule 9(h) indicates that properly designated admiralty and maritime claims will be considered as such for the purposes of Federal Rule of Civil Procedure 82 ("Rule 82").  Fed. R. Civ. P. 9(h)(1).  Rule 82 states that "an admiralty or maritime claim under Rule 9(h) is not a civil action for purposes of [the general federal venue statutes] 28 U.S.C. §§ 1391–1392."  Fed. R. Civ. P. 82.  Thus, proper venue for this case is not based on the general venue statutes but rather on general maritime law.  *Id.*  The rules of venue in maritime cases were set forth in 1890, in the Supreme Court case *In re Louisville Under-writers*, 134 U.S. 488 (1890), in which the Court stated that in an *in personam* maritime case, venue is not only appropriate in the home jurisdiction of the defendant, but rather, venue is proper "in any district in which [the defendant] might be served with a summons or his goods or credits attached. . . ."  *Id.* at 493.  At the very least, venue is appropriate in a district "where the respondent is found and service of process is made on him. . . ."  *In re Louisville Under-writers*, 134 U.S. at

493.

As stated above, Green Dragon is subject to personal jurisdiction in the Northern District of Illinois and venue would also be proper in this district. *See Peitsch v. Regency Cruises Inc.*, 664 F. Supp. 362, 363 (N.D. Ill. 1987)(stating that "'[a]n admiralty action can be maintained against a foreign corporation in any United States district court that can obtain personal jurisdiction over the corporation'")(quoting 1 Moore's Federal Practice, ¶ 0.144[13-1] at 1527 n. 9 (2d ed. 1986)); *see also Bartlett-Collins Co. v. Surinam Nav.* Co., 381 F.2d 546, 548 (10th Cir. 1967)(indicating that venue and personal jurisdiction are synonymous inquiries in maritime cases). In addition, Green Dragon has accepted service in the Northern District of Illinois. Thus, Green Dragon has been found and service of process has been executed on it in the Northern District of Illinois. Under the explicit language in *Louisville*, venue is, therefore, proper in the Northern District of Illinois. For that reason, Green Dragon's motion to dismiss based on improper venue fails.

III.  Motion to Transfer to Southern District of Florida

Green Dragon asks that, in the alternative, the case be transferred to the Southern District of Florida under 28 U.S.C. § 1404(a)("Section 1404(a)") and 28 U.S.C. § 1406(a)("Section 1406(a)"). In fact, although Green Dragon's motion is styled as a motion to dismiss and, in the alternative, to transfer, Green Dragon states in its motion that transfer is the preferred remedy and that dismissal "is not necessary." (Mot. 3). Admiralty and maritime claims are subject to the general

transfer statutes in Sections 1404(a) and 1406(a). *See Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26-27 (1960); *Peitsch*, 664 F. Supp. at 363 (transferring admiralty case under § 1406(a) because brought in improper venue). Section 1406(a) is not applicable to a case such as this where the court has determined that venue is proper in the transferor district. 28 U.S.C. § 1406(a). Section 1404(a) applies in a cases where the court determines that venue is proper in the transferor district and the transferee district. 28 U.S.C. § 1404(a)(stating that transfer can only be made to a district in which the action "might have been brought"). Thus, in the instant action, the first inquiry to be resolved by the court, with respect to Green Dragon's motion to transfer, is whether venue is proper in the proposed transferee district, which is the Southern District of Florida.

### A. Venue in the Southern District of Florida

Green Dragon states that venue is proper in the Southern District of Florida and requests that the court transfer the case to that district. At the outset, we note that both parties seem to concede that venue is also proper in the Southern District of Florida. New Hampshire has not challenged Green Dragon's assertion that venue is proper in Southern District of Florida but rather argues that, based on the factors considered in transfer, venue is more appropriate in the Northern District of Illinois. Based on the record we agree with the parties that venue is proper in the Southern District of Florida. First, it is clear that Green Dragon is subject to personal jurisdiction in the Southern District of Florida since the Yacht was allegedly kept by

Green Dragon in Ft. Lauderdale, Florida and that is where the Damage occurred. Second, even under a strict reading of *Louisville*, venue is proper in the Southern District of Florida, since both parties acknowledge that the Yacht is currently located in the Southern District of Florida. In an *in personam* maritime action, venue is proper in any district where the "respondent's property or credits may be attached." *In re Louisville Under-writers*, 134 U.S. at 493. Therefore, the court finds that venue is proper in the Southern District of Florida, as well as the Northern District of Illinois.

### B. Factors Considered in Transfer

If venue is proper in both the transferor and transferee districts, as is the case in the instant action, the transferor court must then consider: (1) the choice of forum by plaintiff, (2) the convenience of the parties, (3) the convenience of the witnesses, and (4) the interest of justice. *Federal Deposit Ins. Corp. v. Citizens Bank and Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979); *Coffey*, 796 F.2d at 220 n. 3. The movant bears the burden of establishing that the transferee district is "clearly more convenient." *Coffey*, 796 F.2d at 220.

#### 1. New Hampshire's Choice of Forum

New Hampshire has chosen to litigate the instant action in the Northern

District of Illinois.  In considering whether to transfer an action the court should "give some weight to the plaintiff's choice of forum." *Federal Deposit Ins. Corp.*, 592 F.2d at 368; *see also Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)(stating that "some weight must be given to [a plaintiff's] choice of forum"); *See also In re National Presto Industries, Inc.*,  347 F.3d 662, 664 (7th Cir. 2003)(stating that "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'")(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  However, a plaintiff's choice of forum is entitled to considerably less weight when that plaintiff is not from the forum district. *Burt v. C.H. Robinson Worldwide, Inc.*, 2007 WL 781736, at *2 (N.D. Ill. 2007)(stating that [w]hile a plaintiff's chosen forum is generally entitled to substantial weight, this choice is given less weight if it is not the plaintiff's home forum, . . . or if it lacks a significant connection to the claim").  Deference is awarded to a plaintiff's choice of forum so that a party may not use a transfer, pursuant to 28 U.S.C. § 1404(a), to merely shift the inconvenience from one party to another.  *See Heller Financial, Inc.*, 883 F.2d at 1294 (expressing concern that a transfer would merely shift the inconvenience to the plaintiff).

The instant action does not pose a situation whereby a transfer would merely shift inconvenience from one party to another.  New Hampshire acknowledges that it is located in another jurisdiction and, in responding to Green Dragon's motion, New Hampshire has not pointed to any facts to indicate that the Northern District of Illinois would be any more of a convenient forum than the Southern District of

Florida. In fact, New Hampshire's briefs indicate that the Northern District of Illinois was chosen for the filing of this action in large part for the convenience of Green Dragon, which New Hampshire believed to be located in Chicago, Illinois. New Hampshire does state that it would be more convenient for New Hampshire to travel to Chicago than Miami, but does not explain why. (Ans. 9). Thus, while the Northern District of Illinois appears to be New Hampshire's choice of forum, in this case, New Hampshire's choice of forum is not a factor that should be given much weight.

### 2. Convenience of the Parties and Convenience of the Witnesses

Green Dragon argues persuasively that the factors relating to the convenience of the parties and convenience of the witnesses weigh heavily in favor of granting its motion to transfer. Green Dragon points out that, while this action relates to a contract that was allegedly formed in Illinois, the issues in this case do not involve the validity of the contract, but rather factual disputes regarding the maintenance of the Yacht and the events that precipitated the Damage. Green Dragon argues that all of the relevant events occurred in the Southern District of Florida, the witnesses to both the maintenance of the Yacht and the accident are all located in the Southern District of Florida, the Yacht itself is presently located in the Southern District of Florida, and there is currently a breach of contract action filed by Green Dragon and pending in the Southern District of Florida. Based on the facts and allegations in New Hampshire's complaint and undisputed representations, the vast majority of the

witnesses relevant to the instant action are located in the Southern District of Florida. These relevant potential witnesses include individuals responsible for maintenance and service of the Yacht, individuals familiar with the wear and tear on the Yacht, and individuals present at the time of the accident and Damage. New Hampshire has not indicated that any of its own potential witnesses are located in the Northern District of Illinois. The only potential witness identified thus far by the parties who resides in the Northern District of Illinois is Dombrowski who stated in his affidavit that he would not be inconvenienced if the action were transferred to the Southern District of Florida. Thus, it is clear that the convenience of the parties and the witnesses are factors that favor transfer of the action to the Southern District of Florida.

### 3. Interest of Justice

In determining whether the interest of justice supports transferring a case, a court may consider: (1) whether a transfer promotes the "efficient administration of justice," (2) whether the action could be consolidated with other actions in the transferee district, (3) whether the judges in the transferee district are more familiar with the pertinent state law, (4) whether jurors in a particular district have a "financial interest in [the] case," and (5) which district would have jurors that could "best apply community standards." *Coffey*, 796 F.2d at 220-21, 221 n. 4. The court should also consider whether the transferee district has a lighter docket than the transferor district. *In re National Presto Indus., Inc.*, 347 F.3d at 663.

Most of the factors to be considered when weighing the interests of justice do not point decidedly in the direction of one forum over another. Because the Yacht navigated waters both in Illinois and in Florida, both states have an interest in the administration of the insurance policy that insured that vessel. There is no evidence to indicate that either forum would be more efficient in administering justice, that the jurors in either forum would have an interest in the case, that the jurors in either forum would be better equipped to apply community standards, or that either forum has a lighter docket. While New Hampshire takes the position that Illinois law would apply to issues where there is an absence of general maritime law, there is no indication that the United States District Court for the Southern District of Florida would be unable to apply the laws of Illinois in interpreting isolated issues where there is an absence of general maritime law.

When considering all of the factors, along with the relative weight that should be accorded to each factor, it is clear that Green Dragon has met its burden of establishing that the Southern District of Florida would be the most appropriate forum for the instant action. As stated above, the convenience of the parties and witnesses in the instant action weighs overwhelmingly in favor of transferring the instant action. These considerations outweigh New Hampshire's choice of forum and any interests that this forum might have in the instant action. Therefore, we grant Green Dragon's motion to transfer venue pursuant to Section 1404(a).

## CONCLUSION

Based on the foregoing analysis, we deny Green Dragon's motion to dismiss for lack of personal jurisdiction, we deny the motion to dismiss for improper venue, and we grant Green Dragon's motion to transfer.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 17, 2008